IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELPHYA TILLMAN AND MARLON TILLMAN, as Next friend on behalf of Their minor daughter, D.T. and in their Individual capacities,<br><br>    Plaintiff,<br><br>vs.<br><br>CAHOKIA UNIT SCHOOL DISTRICT #187, BOARD OF EDUCATION<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   **Jury Demanded**<br>)<br>)<br>)<br>)<br>)   **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Delphya Tillman ("Delphya") and Marlon Tillman ("Marlon") (collectively "Parents"), individually and on behalf of their minor child, D.T. ("D.T." or Student) (collectively "Plaintiffs"), through their attorneys, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 et seq., the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 et seq. for their complaint regarding disability discrimination against Defendant Cahokia Unit School District #187 Board of Education ("District 187") and as well as for an award of monetary damages, attorney's fees and costs, states as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1415(i)(3), 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117(a).

2.    This court has supplemental jurisdiction over this controversy for the IHRA claims pursuant to 28 U.S.C. § 1367.

1

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4. Venue is properly located in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this complaint occurred within this District.

**PARTIES**

5. Plaintiff D.T. is a six-year-old girl who resides with her parents, Delphya and Marlon, in Cahokia, Illinois.

6. D.T. has been diagnosed with Autism Spectrum Disorder ("ASD") and Speech and/or Language Impairment.

7. D.T. is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1); Section 504, 29 U.S.C. § 705(20)(B); and IHRA, 775 ILCS 5/1-103(Q).

8. D.T. is a student as defined by IHRA, 775 ILCS 5/5A-101(C).

9. District 187 is the governmental unit responsible for administering public education programs, accommodations, and schools within its jurisdiction.

10. District 187 is a public entity and therefore a covered entity under Title II of the ADA, 42 U.S.C. § 12131(1), and its implementing regulations, 28 C.F.R. § 35.104.

11. District 187 receives federal financial assistance and is therefore a covered entity subject to the requirements of Section 504, 29 U.S.C. § 794, and its implementing regulations, 34 C.F.R. Part 104.

12. District 187 is a place of public accommodation as defined by IHRA, 775 ILCS 5/5-101(A)(11).

13. District 187 is an institution of elementary, secondary, or higher education as defined by IHRA, 775 ILCS 5/5A-101(A).

14. Section 504, 29 U.S.C. § 794, and Title II ADA, 42 U.S.C. § 12131 *et seq.*, prohibit public school districts from discriminating against students with disabilities and require schools to provide a free appropriate public education ("FAPE") and reasonable modifications to students with disabilities to ensure equal access to educational programs and services.

15. The President of the Board of Education of District 187 is Marius Jackson, the Superintendent of District 187 is Curtis McCall Jr. ("McCall Jr."), and its principal place of business is 1700 Jerome Ave., Cahokia, IL 62206.

## FACTUAL BACKGROUND

16. In August 2021, Claimant began attending a District 187 Pre-K program.

17. D.T. has been diagnosed with Autism Spectrum Disorder (ASD) and a Speech and Language Impairment.

18. D.T.'s diagnoses are mental impairments that substantially limit major life activities, including thinking, learning, toileting, and communicating.

19. Because of her disabilities, District 187 began providing various accommodations to Claimant in May 2021, such as specialized instruction, physical therapy, occupational therapy, and speech/language therapy.

20. In January 2025, Parents learned, for the first time, that the District failed to provide D.T. with physical therapy during the 2021-2022 school year because of alleged "staffing shortages."

21. Parents did not know that D.T. did not receive physical therapy during the 2021-2022 school year until early 2025.

22. District 187 did not offer or mention compensatory or remedial accommodations to help D.T. make up for the lack of physical therapy during the 2021-2022 school year.

23. D.T. attended District 187's Early Childhood program in a Pre-K class at Maplewood Elementary School during the 2022-2023 school year.

24. On January 28, 2023, D.T.'s speech therapist, Tiffany Wenge ("Wenge"), reported that D.T. was beginning to imitate counting and using indistinguishable words. Parents reported to Wenge that D.T. was saying "stop" and "Daddy" at home.

25. On May 5, 2023, D.T.'s special education team noted that D.T.'s use of facial expressions to communicate had improved and that she had continued to "take steps in the right direction" toward her speech and language goals.

26. Despite her progress, District 187 moved D.T. from Maplewood to a one-hundred-percent special education program at Elizabeth Morris Elementary School ("Elizabeth Morris") because D.T.'s Maplewood class was "full."

27. Parents objected to the change of schools because D.T. would have limited interaction with typically developing peers.

28. District 187 told parents to "take it up with the board."

29. District 187 did not return Parents' calls when they attempted to inquire about D.T.'s change of schools.

30. Parents believe District 187 removed D.T. from Maplewood because of staff objections that D.T. was not potty trained due to her ASD diagnosis.

31. D.T.'s first day of kindergarten was on August 21, 2023.

32. After D.T. started attending Elizabeth Morris, Parents started receiving calls from District 187 staff instructing them to pick up D.T. from school. Staff informed Parents that D.T. had diarrhea and needed to stay home the following day.

33. In Fall 2023, Parents consulted a physician, who confirmed D.T. was not experiencing diarrhea. As a result, they decided not to keep D.T. at home after the school called to report diarrhea.

34. Subsequently, District 187 began calling parents to pick up D.T. from school due to a "low-grade fever." Parents started measuring D.T.'s temperature when they dropped her off at school. D.T.'s temperature was always 98.9 degrees.

35. Unbeknownst to Parents, District 187's removals of D.T. from school were school suspensions.

36. D.T. missed over thirty (30) school days because of these suspensions.

37. District 187 did not consider or discuss compensatory or remedial accommodations for D.T. to make up for the instructional time missed from school due to these suspensions.

38. Progress reports for the 2023-2024 school year indicate that D.T. regressed under the instruction of Elizabeth Morris staff.

39. In Fall 2023, District 187 terminated D.T.'s speech and language accommodations without notice to Parents.

40. Allegedly, D.T. ceased receiving any speech and language accommodations due to staffing shortages.

41. In December 2023, D.T. began seeing a speech/language therapist at Children's approximately once a week for forty-five (45) minutes per session.

42. On February 2, 2024, District 187 and Parents attended a meeting at which Parents first learned that District 187 had terminated D.T.'s speech and language accommodations.

43. District 187's notes stated that "D.T.'s previous [speech language pathologist] is on maternity leave and [the District] is in the process of finding someone to provide speech and

language accommodations. [D.T.] will receive compensatory accommodations for all missed minutes until a replacement therapist starts."

44. Parents complained to District 187's Interim Special Education Director, Kelly Richards ("Richards"), that D.T. was making little to no progress at school. Parents stated that the absence of speech and language accommodations adversely affected D.T.

45. Richards did not respond to Parent's complaints except to say that District 187 would "make up" for the missed speech and language accommodations.

46. Richards also stated that Richards told parents that D.T. slept almost all day at school.

47. At the February 2nd meeting, Parents also discovered that staff reports contained fictitious observations, including alleged observations of D.T. on Sundays and holidays.

48. Parents distributed progress notes from D.T.'s therapists at Children's and requested that District 187 staff work with D.T.'s therapists from Children's. Parents signed consent forms, but do not believe any District 187 staff contacted D.T.'s therapists.

49. On March 14, 2024, District 187 contacted parents to request that D.T. be picked up early from school. Upon arrival, Parents discovered that District 187 staff had no idea where D.T. was. After an extended search, Parents found D.T. with her aunt, who was not listed on the approved sign-out list. District did not provide an explanation for how D.T. was dismissed early to an unapproved individual. This incident significantly undermined Parents' confidence in District 187's ability to keep their daughter safe.

50. In September 2024, District 187 moved D.T. to Menta Academy in Belleville, Illinois ("Menta"). District 187 informed Parents that this change was due to their complaints about the District.

51. In Fall 2024, Parents learned that Menta did not provide D.T. with speech and language accommodations until October 30, 2024.

52. D.T.'s communication skills have continued to regress to the extent that she never uses words, no longer imitates the sound of words, and uses gestures less frequently.

53. Since the 2021-2022 school year, District 187 failed to provide D.T. approximately 64 weeks of physical therapy accommodations, 56 weeks of occupational therapy accommodations, and 60 weeks of speech accommodations.

54. On February 12, 2025, Plaintiff D.T. timely filed a charge of Discrimination with the Illinois Department of Human Rights.

55. District 187 has acted under the color of state law and engaged in the discriminatory and illegal practices described herein deliberately and with deliberate indifference to D.T.'s rights.

56. As a direct and proximate result of District 187's conduct, D.T. has suffered damage, injuries, pain and suffering, inconvenience, emotional distress, and impairment of the quality of life.

**COUNT ONE: VIOLATION OF THE IHRA FOR DISABILITY DISCRIMINATION BY DISTRICT 187 AGAINST D.T.**

57. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

58. It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

59. D.T. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). She has physical and mental impairments that substantially limit major life activities, including thinking, communicating, toileting, and learning.

60. D.T. can access her education with reasonable accommodation.

61. The accommodation requested by the parents did not impose an undue financial or administrative burden or fundamentally alter the nature of District 187's programs.

62. District 187 is an Institution of Elementary, Secondary, or Higher Education as defined by 775 ILCS 5/5A-102(A).

63. Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

64. District 187 is place of public accommodation as defined by 775 ILCS 5/5-101(A)(11).

65. In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her…disability….and the availability of public accommodations."

66. District 187 committed a civil rights violation, in violation of 775 ILCS 5/5A-102(A), when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against D.T. due to her disability by not providing speech, occupational, and physical therapy accommodations.

67. District 187 was involved in a civil rights violation when it retaliated against parents and D.T. for raising concerns about District's failure to provide appropriate accommodations by relocating D.T.'s schools multiple times. Additionally, District penalized D.T. by transferring her to different schools due to exhibiting symptoms related to her disability, such as not being potty trained.

68. District 187 wrongfully refused to make reasonable accommodations to its special education programs to allow D.T. to fully and safely participate in her education programs.

69. District 187 discriminated against Plaintiff D.T. due to her disability by failing to

provide speech, occupational therapy, and physical therapy accommodations.

70. At all relevant times herein, District 187 had actual knowledge of D.T.'s meaningful exclusion from school and the substantial risk of harm that this created for D.T.

71. District 187 intentionally excluded D.T. from meaningful participation in its instructional programs due to her disabilities. District 187 was deliberately indifferent to D.T.'s unqualified right to meaningful participation in its education programs.

72. By refusing to provide reasonable accommodation to its education programs to allow D.T. to participate meaningfully, District 187 discriminated against D.T. on the basis of her disability in violation of the IHRA.

73. As a proximate result of District 187's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

74. WHEREFORE, Plaintiff respectfully requests judgment in her favor and against District 187, as follows:

   a. Award Plaintiff such monetary damages as would fully compensate her for her injuries caused by District 187's actions;
   b. Statutory interest;
   c. Pre and postjudgment interest;
   d. Costs and expenses;
   e. Reasonable attorney fees; and
   f. Grant any additional relief as the court deems just and proper.

**COUNT TWO: VIOLATION OF THE IHRA FOR DISCRIMINATION FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY, DISCRIMINATION BY DISTRICT 187 AGAINST DELPHYA AND MARLON**

75. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

76. It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

77. D.T. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). She has physical and mental impairments that substantially limit major life activities, including thinking, toileting, communicating, and learning.

78. D.T. can access her education with reasonable accommodation.

79. Delphya is an individual associated with a disability as defined by 775 ILCS 5/1-103(I)(2).

80. Marlon is an individual associated with a disability as defined by 775 ILCS 5/1-103(I)(2).

81. District 187 is an Institution of Elementary, Secondary, or Higher Education as defined by 775 ILCS 5/5A-102(A).

82. District 187 is place of public accommodation as defined by 775 ILCS 5/5-101(A)(11).

83. Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

84. In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her…disability….and the availability of public accommodations."

85. In relevant part, 775 ILCS 5/1-103(I)(2) states, "[d]iscrimination based on disability includes unlawful discrimination against an individual because of the individual's association with a person with a disability."

86. District 187 committed a civil rights violation, in violation of 775 ILCS 5/5A-102(A), when it did not take Delphya and Marlon's concerns regarding their advocacy for D.T. and the denial of her accommodations seriously due to the fact that they are associated with an individual with a disability.

87. District 187 committed a civil rights violation when it retaliated against Parents and D.T. for complaining about District's failure to accommodate by moving D.T.'s schools multiple times.

88. At all relevant times herein, District 187 had actual knowledge of D.T.'s meaningful exclusion from school and the substantial risk of harm that this created for D.T.

89. District 187 was deliberately indifferent to Parents' unqualified right to advocate for D.T.'s meaningful participation in its education programs.

90. By refusing to make reasonable accommodations to its education programs to allow Parents to advocate for D.T.'s meaningful participation in education programs, District 187 discriminated against Plaintiffs on the basis of their association with an individual with a disability.

91. As a proximate result of District 187's conduct, Plaintiffs suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

92. WHEREFORE, Plaintiffs Delphya and Marlon respectfully request judgment in their favor and against District 187, as follows:

    a. Award Plaintiff such damages as would fully compensate them for their injuries caused by District 187's actions;

    b. Statutory interest;

    c. Pre and postjudgment interest;

    d. Costs and expenses;

    e. Reasonable attorney fees; and

    f. Grant any additional relief as the court deems just and proper.

### COUNT THREE: SECTION 504 OF THE REHABILITATION ACT

93. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

94. D.T. is a qualified individual with a disability within the meaning of 29 U.S.C. § 794(a). She has physical and mental impairments that substantially limit major life activities, including thinking, communicating, toileting, and learning. She meets the essential eligibility requirements for participation in District 187's educational programs.

95. District 187 wrongfully refused to make reasonable accommodations to its education programs to allow D.T. to fully and safely participate in and take advantage of its education programs. The accommodations requested by the parents, including physical therapy, occupational therapy, and speech therapy accommodations, did not impose an undue financial or administrative burden or fundamentally alter the nature of District 187's programs.

96. At all relevant times herein, District 187 had actual knowledge of D.T.'s meaningful exclusion from accommodations and the substantial risk of harm that this created to D.T.

97. District 187 was deliberately indifferent to D.T.'s unqualified right to meaningful participation in its special education programs.

98. By refusing to make reasonable accommodations to its special education programs to allow D.T. to participate meaningfully, District 187 discriminated against D.T. on the basis of her disability in violation of Section 504.

99. WHEREFORE, D.T. prays as follows:

   a. Declare District 187's conduct unlawfully discriminated against D.T. and violated Section 504;

   b. Award D.T. such monetary damages as would fully compensate her for her injuries caused by District 187's actions;

   c. Award D.T. reasonable costs, expenses, attorney's fees, and prejudgment interest as permitted by 42 U.S.C. § 1988, and for all costs, expenses, fees, and pre and postjudgment interest associated with bringing this action; and

   d. For such other and further relief as the court deems just and proper.

**COUNT FOUR: VIOLATION OF THE ADA FOR DISABILITY DISCRIMINATION BY DISTRICT 187 AGAINST D.T.**

100. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

101. Plaintiff D.T. is, and was at all times pertinent hereto, a qualified individual within the meaning of 42 U.S.C. § 12102(1) in that she has ASD and Speech and/or Language Impairment.

102. Plaintiff D.T.'s ASD and Speech and/or Language Impairment is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff; a record of such an impairment; and/or District 187 perceives her to have a disability.

103. District 187 is a place of public accommodation under the Americans with Disabilities Act.

104. D.T. can access her education with reasonable accommodation.

105. The accommodations requested by Parents on behalf of D.T. did not impose an undue financial or administrative burden or fundamentally alter the nature of District 187's

programs.

106. District 187 committed a civil rights violation, in violation of the Americans with Disabilities Act, when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against D.T. due to her disability by not providing speech, occupational and physical therapy accommodations.

107. District 187 wrongfully refused to make reasonable accommodations to its special education programs to allow D.T. to fully and safely participate in her education programs.

108. At all relevant times herein, District 187 had actual knowledge of D.T.'s meaningful exclusion from school and the substantial risk of harm that this created for D.T.

109. District 187 intentionally excluded D.T. from meaningful participation in its instructional programs due to her disabilities. District 187 was deliberately indifferent to D.T.'s unqualified right to meaningful participation in its education programs.

110. By refusing to make reasonable accommodations to its special education programs to allow D.T. to participate meaningfully, District 187 discriminated against D.T. on the basis of her disability in violation of the Americans with Disabilities Act.

111. District 187 retaliated against D.T. in violation of the ADA because she exhibited symptoms of her disability.

112. As a proximate result of District 187's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

113. WHEREFORE, Plaintiff respectfully requests judgment in her favor and against District 187, as follows:

    a. Award Plaintiff such damages as would fully compensate her for her injuries caused by District 187's actions;

    b. Punitive damages;

    c. Statutory interest;

    d. Pre and postjudgment interest;

    e. Costs and expenses;

    f. Reasonable attorney fees; and

    g. Grant any additional relief as the court deems just and proper.

### COUNT FIVE: VIOLATION OF THE ADA FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY DISCRIMINATION BY DISTRICT 187 AGAINST DELPHYA AND MARLON

114. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

115. Plaintiff D.T. is, and was at all times pertinent hereto, a qualified individual within the meaning of 42 U.S.C. § 12102(1) in that she has Autism Spectrum Disorder ("*ASD*") and Speech and/or Language Impairment.

116. Plaintiff D.T.'s Autism Spectrum Disorder ("*ASD*") and Speech and/or Language Impairment are disabilities as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff; a record of such an impairment; and/or District 187 perceives her to have a disability.

117. Parents are associated with D.T., who District 187 knows has a disability.

118. District 187 is a place of public accommodation under the Americans with Disabilities Act.

119. Pursuant to the ADA, it is discriminatory to exclude or otherwise deny

accommodations or opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

120. D.T. can access her education with reasonable accommodations.

121. The accommodations requested by Parents on behalf of D.T. did not impose an undue financial or administrative burden or fundamentally alter the nature of District 187's programs.

122. District 187 committed a civil rights violation, in violation of the Americans with Disabilities Act, when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against D.T. due to her disability by failing to provide necessary related accommodations, including speech, physical, and occupational therapy accommodations.

123. District 187 committed a civil rights violation, in violation of the ADA, when it did not take Delphya and Marlon's concerns regarding their advocacy for D.T. and the denial of her accommodations seriously due to the fact that they are associated with an individual with a disability.

124. At all relevant times herein, District 187 had actual knowledge of D.T.'s meaningful exclusion from school and the substantial risk of harm that this created for D.T.

125. District 187 was deliberately indifferent to Parents' unqualified right to advocate for D.T.'s meaningful participation in its education programs.

126. By refusing to make reasonable accommodations to its education programs to allow Parents to advocate for D.T.'s meaningful participation in education programs, District 187 discriminated against Parents on the basis of their association with an individual with a disability.

127. District 187 retaliated against Parents in violation of the ADA because of their

association with an individual with a disability and because of their advocacy of their daughter who has a disability.

128. As a proximate result of District 187's conduct, Plaintiffs suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

129. WHEREFORE, Plaintiff respectfully requests judgment in their favor and against District 187, as follows:

   a. Award Plaintiff such damages as would fully compensate her for her injuries caused by District 187's actions;

   b. Punitive damages;

   c. Pre and postjudgment interest;

   d. Statutory interest;

   e. Costs and expenses;

   f. Reasonable attorney fees; and

130. Grant any additional relief as the court deems just and proper.

## COUNT SIX: VIOLATION OF THE ILLINOIS CIVIL RIGHTS REMEDIES RESTORATION ACT

131. Plaintiffs incorporate the allegations listed above by reference.

132. Plaintiff D.T. is an individual entitled to protection under the Americans with Disabilities Act.

133. Plaintiff D.T. is an individual entitled to protection pursuant to 775 ILCS 60/15.

134. Defendant's above-mentioned actions are violations of Plaintiff's Civil Rights, as defined under 775 ILCS 60/15.

135. WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

a. Declaring Defendant's actions constitute civil rights violations under 775 ILCS 60/5.

b. Awarding Plaintiff D.T. such damages as would fully compensate her for her injuries caused by Defendant's civil rights violations, including compensatory and punitive damages, emotional pain and suffering, and other nonmonetary losses that may be determined by a jury or a court sitting without a jury, but in no case less than $4,000;

c. Awarding Plaintiff D.T. her costs, expenses, and attorney's fees; and

d. Granting any additional relief as the Court deems just and proper

## JURY DEMAND

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury of all issues triable by a jury.

Respectfully submitted,

*/s/ Sarah Jane Hunt*
Sarah Jane Hunt
KENNEDY HUNT, P.C.
4500 W Pine Blvd
St. Louis, MO 63108
Tel: (314) 872-9041
Fax: (314) 872-9043
sarahjane@kennedyhuntlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the United States District Court for the Southern District of Illinois' CM/ECF electronic filing system on July 31, 2025, to the counsel of record:

*/s/ Sarah Jane Hunt*